UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EDWARD VINES,
    Plaintiff,

v.     CASE NO. 3:16-cv-893 (SRU)

BRIATICO, *et al.*,
    Defendants.

**INITIAL REVIEW ORDER**

Plaintiff Edward Vines, currently incarcerated at the Osborn Correctional Institution in Somers, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983 alleging that the defendants violated his First, Fifth, Eighth, and Fourteenth Amendment rights. Vines names fifteen defendants: Correctional Officers Briatico, Owen, Lapointe, Williams, Selgado, and Castle; Counselor Supervisors Bouffard and Long; Captains Garcia and Colon; Deputy Warden Powers; Wardens Brighthaupt and Maldinado; Kevin D. Roy; and Commissioner Scott Semple. The complaint was received by the Court on June 10, 2016. Vines' motion to proceed *in forma pauperis* was granted on June 16, 2016.

    I.    **Standard of Review**

Under section 1915A of Title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the

grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

    II.    **Allegations**

The following allegations are taken from Vines' complaint. *See* Compl., Doc. # 1. The incidents underlying this action occurred at Osborn Correctional Institution ("Osborn") and Cheshire Correctional Institution ("Cheshire"). Defendants Briatico, Owen, Lapointe, Williams, Selgado, Castle, Bouffard, Garcia, Powers, and Brighthaupt worked at Cheshire. Defendants Long, Colon and Maldinado worked at Osborn. Vines has separated his statement of facts into five counts, alleging separate facts to support each claim for relief.

    A.    <u>Count One</u>

On July 25, 2013, Vines was confined at Cheshire. Correction Officer Briatico forced him to move from cell NB124 to cell NB144 or be placed in segregation. Vines is a Muslim. His cellmate, a Christian, was not required to move. Cell NB144 was a two-person cell. Vines remained there, by himself, for over a month.

On July 25, 2013, Vines wrote to C/S Bouffard, the Unit Manager of North Block One, and copied Deputy Warden Powers. He reported Correctional Officer Briatico for making threats

and racial discrimination. On August 2, 2013, defendant Bouffard responded that the tier was experiencing low water pressure at the time of the incident and that not every inmate could be moved to the top tier because there were not enough available beds. Vines considers the response a cover-up.

That same day, Correctional Officer Briatico retaliated against Vines by calling him a "snitch." Vines considers that statement defamatory and a danger to his safety because "snitches" are commonly assaulted by other inmates. On August 4, 2013, Vines contacted the security division regarding his personal safety. Copies of that letter were sent to defendants Bouffard and Powers. On August 12, 2013, Vines' letter was forwarded to Warden Brighthaupt. On August 21, 2013, Vines filed an administrative remedy form concerning his personal safety. It was returned without disposition. Vines filed a second administrative remedy form on September 1, 2013, but received no response.

On September 11, 2013, during a 9/11 memorial broadcast, Correctional Officer Briatico stated "To Hell with all these Muslims." When confronted by other Muslim inmates, defendant Briatico made other derogatory remarks. Vines told the other inmates to make written complaints against her. The following day, Correctional Officer Briatico filed a false disciplinary report against Vines for interfering with safety and security by recommending that the inmates report her.

On September 20, 2013, Vines wrote to the Commissioner of the Department of Correction regarding the above incidents. On October 4, 2013, Deputy Warden Cepelak informed Vines that a copy of that letter was being forwarded to Warden Brighthaupt. She told Vines he could resubmit the matter to her office only if he was unable to resolve it at the facility

3

or district levels and instructed him to include all responses to his correspondence with any resubmission.

On September 24, 2013, Vines submitted an administrative remedy form against Correctional Officer Briatico for slanderous remarks against Muslims. He did not receive any written response. On October 2, 2013, Captain Garcia interviewed Vines regarding the remarks on September 11, 2013, and asked him for a list of inmates who had heard the comment. None of these inmates were interviewed regarding the incident. On October 28, 2013, Vines submitted his administrative remedy to level 2. It was stamped "Received," but not processed.

On November 20, 2013, Vines again sought assistance from Deputy Warden Cepelak. On December 9, 2013, Vines received a letter from then Deputy Commissioner Semple telling him to follow the chain of command. Vines contends that he did so.

Vines alleges that, as a result of these actions, his rights to due process and to freely practice his religion have been infringed. He has been placed in punitive segregation and subjected to "character assassination, inmate assaults, threats, retaliation, discrimination and the act of conspiracy among defendants." Doc. #1 at 5, ¶ 36.

    B.    <u>Count Two</u>

On January 9, 2013, Vines wrote to Captain Garcia and Deputy Warden Powers about being stunned with an LED high beam flashlight by Correctional Officer Owens and others. Vines alleges that the use of the flashlights caused him chronic pain. On January 11, 2013, Deputy Warden Powers referred Vines to his unit manager. On January 15, 2013, Captain Garcia stated that the issue had been addressed.

On February 1, 2013, Correctional Officer Owens again stunned Vines with a flashlight.

4

Vines filed an administrative remedy, which was "compromised" by Warden Brighthaupt. On May 20, 2013, Correctional Officer Owens stunned Vines with a flashlight. In response to his written request to Deputy Warden Powers, Counselor Supervisor Bouffard stated that staff had been reminded not to shine flashights in inmates' eyes.

On May 29, 2013, and June 12, 2013, Correctional Officer Lapointe stunned Vines with a flashlight. On June 8, 2013, Correctional Officer Owens stunned Vines with his flashlight. On June 12, 2013, Vines filed a second administrative remedy form regarding this practice.

On September 2, 2013, Vines informed the Office of the Attorney General of his intent to sue. On September 11, 2013, Correctional Officer Briatico stunned Vines with a flashlight. On November 12, 2013, Correctional Officer Williams stunned Vines with a flashlight. The following day, Correctional Officer Selgado did so. On November 20, 2013, Vines informed Director of Security Kim Weir of his intent to sue.

On December 9, 2013, Vines submitted a request to the Freedom of Information Liaison to preserve videotapes on sixteen dates. Vines mistakenly indicated that two of the dates were December 12 and 13, 2013. The only tapes that were preserved were for those incorrect dates.

On December 20 and 21, 2013, Correctional Officer Selgado stunned Vines with his flashlight. On December 25 and 30, 2013, Correctional Officer Castle stunned Vines with his flashlight. On December 30, 2013, Vines again wrote to Captain Garcia to complain that the incidents continued after the matter had been addressed. On January 7, 2014, Vines wrote to Warden Brighthaupt asking that videotapes be preserved for litigation. That did not occur. On January 16, 2014, Vines again wrote to the Freedom of Information Liaison seeking preservation of videotapes.

5

The actions of defendants Lapointe, Owen, Williams, Selgado, Briatico, Castle, Bouffard, Garcia, Powers and Brighthaupt have caused Vines to suffer from migraine headaches, sudden temporary blindness, damaged retinas, and frequent dizzy spells.

### C.   Count Three

On October 1, 2015, Vines found a rat in his cell locker at Osborn. On October 3, 2015, Vines submitted an inmate request to Captain Colon stating that the housing unit was infested with rats and seeking an immediate transfer. A copy of the request was sent to Warden Maldinado. When neither defendant responded to the request, on October 21, 2015, Vines filed an administrative remedy.

Between November 30, 2015, and December 6, 2015, Vines was housed in F-Block, segregated housing, which was infested with rats and roaches. He was traumatized when he woke to find his head and face covered with roaches. He submitted an inmate request to Counselor Supervisor Long but received no response.

On December 22, 2015, Vines was bitten on the foot by a rat that climbed into his bed while he was asleep. That day, Vines submitted a second administrative remedy concerning the rat and roach infestation in E-Block but received no response. On January 17, 2016, Vines filed an administrative remedy about the infestation of rats and roaches in E-Block and F-Block at Osborn. He sought extermination of the vermin and immediate transfer. He received no response.

As a result of the infestation, Vines has suffered recurring nightmares, post-traumatic stress disorder, and the loss of hundreds of dollars in commissary food items.

### D.   Count Four

On October 3, 2015, Vines submitted a request to Captain Colon complaining that he was

housed in a building that had been condemned by the Department of Public Health. The water levels were contaminated, there was inadequate ventilation and heating, the building had black mold and asbestos, and inmates were double-celled in 6' by 8' cells. He requested immediate transfer, bottled drinking water, masks, a single cell and extra blankets and sheets. Captain Colon did not respond. On October 21, 2015, Vines submitted a similar request to Warden Maldinado but received no response.

On November 5, 2015, Vines filed an administrative remedy regarding housing conditions at Osborn. Again, no one responded. Exposure to asbestos, mold, gnats, contaminated water, lead paint and inadequate ventilation and heating has caused Vines to suffer dizzy spells, respiratory problems, neural problems, frequent nose bleeds, chronic dry eyes and optical problems, nausea, and migraine pain. Being double-celled in a cell designed for one inmate has caused him to suffer from chronic depression, PTSD, behavioral disorders, and inmate assaults.

E.   Count Five

On December 18, 2015, Vines wrote to defendant Long regarding his confinement in the "ticket block" as a restrictive status inmate. He noted that he was denied recreation in the gym and exercise in the weight room, had to eat all meals in his cell and was denied other privileges afforded to general population inmates such as using a hotpot and wearing khakis and t-shirts. Defendants Long and Maldinado did not respond to his letters complaining that restrictive housing placement violated his right to due process.

On January 3, 2016, Vines filed an administrative remedy. No one responded. On January 14, 2016, a lawyer from Inmates' Legal Aid Program confirmed Vines' contention that it was common for inmates at Osborn to experience trouble with the inmate grievance process. On

May 13, 2016, Captain Colon threatened to place Vines in segregation if he continued to complain and file grievances.

While in restrictive housing, Vines was denied out-of-cell exercise time for two-to-three months and compelled to eat all meals in his cell where the toilet had black mold and gnats.

II.     Analysis

Vines asserts five claims: (1) defendant Briatico retaliated against Vines and defendants Briatico and Semple denied him due process and freedom to practice his religion; (2) defendants Owen, Lapointe, Williams, Briatico, Selgado, Castle, Bouffard, Garcia, Powers, and Brighthaupt were deliberately indifferent to Vines' health and safety; (3) defendants Colon, Long, Maldinado, and Semple subjected Vines to unconstitutional conditions of confinement as a result of the rat and roach infestation; (4) defendants Colon, Maldinado, and Semple subjected Vines to unconstitutional conditions of confinement as a result of the building conditions at Osborn; and (5) defendants Long, Colon, Maldinado, and Semple confined Vines in restrictive housing without due process and, as a result, subjected Vines to unconstitutional conditions of confinement. The first two claims occurred at Cheshire, the last three at Osborn.

The complaint does not comply with Federal Rule of Civil Procedure 20's requirements governing party joinder. Rule 20(a)(2) permits the joinder of multiple defendants in a single action if two criteria are met: first, the claims "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences"; and second, "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis." *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.,* 596 F. Supp. 2d 821, 826 (S.D.N.Y.

2008) (citation omitted). As the Second Circuit has observed in the Rule 13 context,[1] whether a counterclaim arises out of the same transaction as the original claim depends upon the logical relationship between the claims and whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

The plaintiff asserts claims arising at two correctional facilities. The only defendant named in both sets of claims is Commissioner Semple. The claims arising at Osborn concern the conditions of the building itself both generally and within specific housing units. Those claims are unrelated to the claims arising at Cheshire. Because the claims do not "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences," Fed. R. Civ. P. 20(a)(2), Vines' complaint fails to comply with Rule 20.[2]

Because the Second Circuit has expressed a preference for adjudicating cases on their merits, it will generally find failure to grant leave to amend an abuse of discretion where the sole

---

[1] "In construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims." *Barnhart v. Town of Parma,* 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (citation omitted).

[2] The court notes that Rule 20 is becoming increasingly important to district courts tasked with reviewing prisoner's complaints pursuant to 28 U.S.C. § 1915A. As two commentators have noted:

> In the past, courts did not always pay much attention to this rule. However, nowadays they are concerned that prisoners will try to avoid the filing fee and "three strikes" provisions of the Prison Litigation Reform Act (PLRA) by joining claims in one complaint that really should be filed in separate actions which require separate filing fees and would count as separate "strikes" if dismissed on certain grounds.

John Boston & Daniel E. Manville, Prisoners' Self-Help Litigation Manual 348 (4th ed. 2010) (collecting cases). Indeed, if the Court reviewed the plaintiff's complaint and struck redundant or immaterial allegations, as opposed to dismissing the complaint in its entirety, the plaintiff would circumvent the PLRA's "three strikes" rule and filing fee requirements.

ground for dismissal is that the complaint does not comply with rules governing joinder. *See, e.g.*, *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988). Accordingly, Vines is hereby directed to file an amended complaint that complies with Rule 20 of the Federal Rules of Civil Procedure. The amended complaint should include only one of the distinct sets claims. Vines shall file his amended complaint within **thirty (30) days** from the date of this order. If he wishes to pursue the other set of claims, he may do so in a separate action.

    **SO ORDERED** this 29th day of June 2016 at Bridgeport, Connecticut.

    /s/ Stefan R. Underhill
    Stefan R. Underhill
    United States District Judge