## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

|                          |   |                          |
|--------------------------|---|--------------------------|
|                          | : |                          |
| EDWARD VINES,            | : |                          |
|     Plaintiff,           | : |                          |
|                          | : |                          |
|     v.                   | : | CASE NO. 3:16-cv-893 (SRU) |
|                          | : |                          |
| C/O BRIATICO, et al.,    | : |                          |
|     Defendants.          | : |                          |
|                          | : |                          |

### INITIAL REVIEW ORDER RE AMENDED COMPLAINT

Plaintiff Edward Vines, currently incarcerated at the Osborn Correctional Institution in Somers, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983, alleging that the defendants violated his First, Fifth, Eighth, and Fourteenth Amendment rights. Vines included in his original complaint claims arising at two correctional facilities. In response to the Court's order, Vines has filed an amended complaint including only his claims arising at Cheshire Correctional Institution. The amended complaint names ten defendants: Correctional Officers Briatico, Owen, Lapointe, Williams, Selgado, and Castle; Counselor Supervisor Bouffard; Captain Garcia; Deputy Warden Powers; and Warden Brighthaupt.

Under section 1915A of Title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed

allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

I.      <u>Allegations</u>[1]

        The incidents underlying this action occurred at Cheshire Correctional Institution ("Cheshire"). Vines separated his statement of facts into two counts, alleging separate facts to support each claim for relief.

        A.      <u>Count One</u>

        On July 23, 2013, Vines was confined at Cheshire. Correction Officer Briatico forced him to move from cell NB124 to cell NB144 or be placed in segregation. Vines is a Muslim. His cellmate, a Christian, was not required to move. Despite the fact that Cell NB144 was a two-person cell, Vines remained there by himself for over a month.

        On July 25, 2013, Vines wrote to Counselor Supervisor Bouffard, the Unit Manager of North Block One, and copied Deputy Warden Powers. He reported Correctional Officer Briatico for making threats and racial discrimination. On August 2, 2013, defendant Bouffard responded that the tier was experiencing low water pressure at the time of the incident and that not every inmate could be moved to the top tier because there were not enough available beds. Vines

_____

[1] Although Vines references various exhibits, he has not attached any exhibits to his amended complaint. In a separate motion, however, he asks the Court to treat specified exhibits attached to the original complaint as

considers the response a cover-up.

That same day, Correctional Officer Briatico retaliated against Vines by calling him a "snitch." Vines considers the action defamatory and a danger to his safety because "snitches" are commonly assaulted by other inmates. On August 4, 2013, Vines contacted the security division regarding his personal safety. Copies of that letter were sent to defendants Bouffard and Powers. On August 12, 2013, Vines' letter was forwarded to Warden Brighthaupt. On August 21, 2013, Vines filed an administrative remedy form concerning his personal safety. It was returned without disposition. Vines filed a second administrative remedy form on September 1, 2013, but received no response.

On September 11, 2013, during a 9/11 memorial broadcast, Correctional Officer Briatico stated, "To Hell with all these Muslims." When confronted by other Muslim inmates, defendant Briatico made other derogatory remarks. Vines told the other inmates to make written complaints against her. The following day, Correctional Officer Briatico filed a false disciplinary report against Vines for interfering with safety and security by recommending that the inmates report her.

On September 20, 2013, Vines wrote to the Commissioner of the Department of Correction regarding the above incidents. On October 4, 2013, Deputy Warden Cepelak informed Vines that a copy of the letter was being forwarded to Warden Brighthaupt. She told Vines he could resubmit the matter to her office only if he was unable to resolve it at the facility or district levels and instructed him to include all responses to his correspondence with any resubmission.

---

incorporated into the amended complaint. (doc. 9)

On September 24, 2013, Vines submitted an administrative remedy form against Correctional Officer Briatico for slanderous remarks against Muslims. He did not receive any written response. On October 2, 2013, Captain Garcia interviewed Vines regarding the remarks on September 11, 2013, and asked him for a list of inmates who had heard the comment. None of those inmates was interviewed regarding the incident. On October 28, 2013, Vines submitted his administrative remedy to level 2. It was stamped "Received," but not processed.

On November 20, 2013, Vines again sought assistance from Deputy Warden Cepelak. On December 9, 2013, Vines received a letter from then-Deputy Commissioner Semple telling him to follow the chain of command. Vines contends that he did so.

Vines alleges that, as a result of these actions, his rights to due process and to freely practice his religion have been infringed. He has been placed in punitive segregation and subjected to "character assassination, inmate assaults, threats, retaliation, discrimination and the act of conspiracy among defendants." Doc. #8 at 5, ¶ 32.

B.    Count Two

Count Two incorporates the allegations in Count One. In addition, Vines alleges that on January 9, 2013, Vines wrote to Captain Garcia and Deputy Warden Powers about being stunned with an LED high beam flashlight by Correctional Officer Owens and others. Vines alleges that the use of the flashlights caused him chronic pain. On January 11, 2013, Deputy Warden Powers referred Vines to his unit manager. On January 15, 2013, Captain Garcia stated that the issue had been addressed.

On February 1, 2013, Correctional Officer Owens again stunned Vines with a flashlight. Vines filed an administrative remedy, which was "compromised" by Warden Brighthaupt. On

May 20, 2013, Correctional Officer Owens stunned Vines with a flashlight. In response to his written request to Deputy Warden Powers, Counselor Supervisor Bouffard stated that staff had been reminded not to shine flashights in inmates' eyes.

On May 29, 2013, and June 12, 2013, Correctional Officer Lapointe stunned Vines with a flashlight. On June 8, 2013, Correctional Officer Owens stunned Vines with his flashlight. On June 12, 2013, Vines filed a second administrative remedy form regarding this practice.

On September 2, 2013, Vines informed the Office of the Attorney General of his intent to sue. On September 11, 2013, Correctional Officer Briatico stunned Vines with a flashlight. On November 12, 2013, Correctional Officer Williams stunned Vines with a flashlight. The following day, Correctional Officer Selgado did so. On November 20, 2013, Vines informed Director of Security Kim Weir of his intent to sue.

On December 9, 2013, Vines submitted a request to the Freedom of Information Liaison to preserve videotapes on sixteen dates. Vines mistakenly indicated that two of the dates were December 12 and 13, 2013. The only tapes that were preserved were for those incorrect dates.

On December 20 and 21, 2013, Correctional Officer Selgado stunned Vines with his flashlight. On December 25 and 30, 2013, Correctional Officer Castle stunned Vines with his flashlight. On December 30, 2013, Vines again wrote to Captain Garcia to complain that the incidents continued after the matter had been addressed. On January 7, 2014, Vines wrote to Warden Brighthaupt asking that videotapes be preserved for litigation. That did not occur. On January 16, 2014, Vines again wrote to the Freedom of Information Liaison seeking preservation of videotapes.

The actions of defendants Lapointe, Owen, Williams, Selgado, Briatico, Castle, Bouffard,

Garcia, Powers and Brighthaupt have caused Vines to suffer from migraine headaches, sudden temporary blindness, damaged retinas, and frequent dizzy spells.

II.    Analysis

Vines includes two counts in his amended complaint. In the first count, he alleges that defendant Briatico retaliated against him and denied him due process and freedom to practice his religion. In the second count, Vines alleges that defendants Owen, Lapointe, Williams, Briatico, Selgado, Castle, Bouffard, Garcia, Powers, and Brighthaupt were deliberately indifferent to Vines' health and safety by shining flashlights into his eyes or permitting others to do so.

A.    Retaliation

To state a claim for retaliation, Vines must allege facts showing that he was engaged in constitutionally protected activity, that the defendant took adverse action against him, and a causal connection between the protected activity and the adverse action. *See Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). Temporal proximity between the protected activity and the adverse action can support a causal connection. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) ("A plaintiff can establish a causal connection that suggests retaliation by showing that the protected activity was close in time to the adverse action.").

Vines alleges that defendant Briatico issued a false disciplinary report the day after he encouraged other inmates to file written complaints against her and that she called him a "snitch" shortly after he submitted a grievance against her. Those allegations are sufficient to state a plausible retaliation claim.

B.    Denial of Due Process

Vines also contends that defendant Briatico denied him due process. The Court assumes

6

that claim is related to the allegedly false disciplinary charge issued by defendant Briatico. A

false accusation, without more, is not cognizable under section 1983 as a denial of due process.

*Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005). A false disciplinary report

"violates due process only where either procedural protections were denied that would have

allowed the inmate to expose the falsity of the evidence against him … or where the fabrication

of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive

constitutional rights…." *Id.* (citations omitted).

Vines alleges that defendant Briatico issued the disciplinary report because he exercised

his First Amendment right to encourage other inmates to file grievances against her. That

allegation is sufficient to state a plausible claim for denial of due process.

> C.      Denial of Freedom to Practice Religion

Vines alleges that he was denied his right to freely practice his religion. Although he

alleges that he was transferred to a different cell because he is a Muslim, he alleges no facts

suggesting that he was unable to practice his religion at any time while confined at Cheshire

Correctional Institution. Absent any supporting factual allegations, that claim is dismissed

pursuant to 28 U.S.C. § 1915A(b)(1).

The Court does construe the allegations regarding Vines' transfer to a different cell as a

claim for discrimination based on his religion. That claim will proceed against defendants

Briatico, Boffard, Powers and Brighthaupt.

> D.      Deliberate Indifference to Health and Safety

Vines alleges that the defendants were deliberately indifferent to his health and safety by

shining high-power flashlights into his eyes. To state an Eighth Amendment claim for deliberate

indifference to health or safety, Vines must show that the alleged conduct is sufficiently serious and that the defendants acted with a sufficiently culpable state of mind, that is, they acted maliciously and sadistically to cause harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Vines alleges that the repeated exposure to the high-power flashlights caused him to experience migraine headaches, retinal damage, temporary blindness and dizzy spells. He also alleges that this practice continued after staff had been instructed to stop the practice. Those allegations are sufficient to state a plausible claim.

III.    Conclusion

The case will proceed on Vines' claims for retaliation and denial of due process against defendant Briatico; the claim for religious discrimination against defendants Briatico, Boffard, Powers, and Brighthaupt; and the deliberate indifference claim against all defendants.

The Court enters the following orders:

1)      **The Clerk shall** verify the current work addresses for the defendants with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Amended Complaint to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)      **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the

8

complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3)     **The Clerk shall** send written notice to the plaintiff of the status of this action, along with a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Amended Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If the plaintiff changes his address at any time during the litigation of this case,

9

Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

**SO ORDERED** this 14th day of July 2016 at Bridgeport, Connecticut.

            /s/ Stefan R. Underhill
            Stefan R. Underhill
            United States District Judge

10